The Dubuque Southwestern R'y Co. et al. v. The Cedar Rapids & Missouri River R'y Co.

1. **Railroad Lands:** DISPUTE AS TO TITLE: CONTRACT IN SETTLEMENT OF: CONSTRUCTION: CONDITION PRECEDENT: FAILURE TO PERFORM USELESS ACT NO GROUND FOR DAMAGES. Plaintiffs and defendant both claimed an interest in certain lands granted by congress to the state of Iowa, and by the state to the Iowa Central Air Line Railroad Company. In settlement of their contention, they entered into a contract, (set out in the opinion, and construed in 43 Iowa, 239,) whereby the defendant agreed to convey to the plaintiffs 46,000 acres of the land, *provided* the parties should be able to draw lands to that amount on account of the construction of the railroad between Anamosa and Cedar Rapids; and whereby, also, defendant agreed to co-operate with plaintiffs to secure such legislation by the state of Iowa as would result in an appropriation of a portion of said lands for the construction of the road between Anamosa and Cedar Rapids. This contract was made in 1867, but the request upon defendant for such co-operation was not made till 1878. No lands were granted to the parties on account of the building of said portion of road, and so plaintiffs got no lands under the contract. But plaintiffs in this action seek to recover damages on account of the alleged refusal of the defendant to unite with

them in an effort to secure legislation enabling them to draw such lands. *Held* that plaintiffs could not recover, because—

(1) When the request for such co-operation was made, all the lands included in the grant had been finally disposed of by the state, and an effort *then* to secure from the legislature a grant of a part of the lands must have been unavailing; and an action will not lie for the failure or refusal of a party to a contract to do a vain or useless act.

(2) If it were admitted, as claimed, that a proper effort might have secured an appropriation to the defendant of 20,505 acres for the building of the road from *Marion* to Cedar Rapids, still defendant would not be liable under its contract for refusing to join in such effort; because, if successful, plaintiffs would not have been entitled to any of the land,—the condition precedent to a conveyance to them being that at least *46,000* acres should be secured for building the road from *Anamosa* to Cedar Rapids.

## Appeal from Dubuque District Court.

### SATURDAY, JUNE 6.

PLAINTIFFS brought this action to recover damages on account of certain alleged breaches by defendant of a contract entered into between defendant and Platt Smith, as attorney for certain judgment creditors of the Dubuque Southwestern Railroad Company, on the twenty-eighth day of June, 1867. They allege that the agreement of the parties is expressed in a resolution which was adopted by defendant's board of directors on the thirteenth of June, 1867, and which is as follows: " Resolved, that the contract (so-called) contained in letters and papers between the president of this company and Hon. Platt Smith, attorney for certain owners of judgments against the late Iowa Central Company, and, as claimed by said Smith, covering the land granted to the company, is a fair and just basis of compromise of said claim and judgment, and the president is authorized to settle the same in conformity with the spirit of the contract referred to, with the right, also, to adjust in his discretion any difference of opinion that may be between the parties relating to the right of way or franchise between Lyons and Anamosa; it being

understood that both parties shall unite in an earnest effort to draw the lands on the Anamosa line by which this contract can be satisfied. This matter is to be settled as follows: The 46,000 acres of land shall be taken from the land grant remaining undisposed of, and to which the title is undisputed, beginning at the township line north of Mapleton, in Monona county, or the northerly side of the surveyed line of the Iowa Central Railroad, taking odd and even numbers to which either of the acts of congress has given title, running thence east only on the northerly side of said line for quantity, taking all the lands of the grant to which the title is undisputed. The decree to be assigned to John I. Blair. The question of old grade to be left for future consideration. The parties agree to join in doing all acts which may be necessary to complete the title, which shall be transferred to Platt Smith, attorney, or to such other parties as may be mutually satisfactory; it being understood that the intent is to draw lands for the road from Anamosa to the Missouri river. This shall be a full and final settlement of all claims and demands between the parties. Provided, this settlement is on the condition that the parties shall be able to hold for and on account of the road from Anamosa to Cedar Rapids at least as much land as forty-six thousand acres."

Plaintiffs allege that they are now the owners of all the interest and rights acquired under the contract by the parties for whom said Smith acted in making it. They set out in their petition the act of congress granting to this state certain lands in aid of the construction of a railroad from Lyons to a point of intersection with the Iowa Central Air Line Railroad at Maquoketa, and running thence west across the state to the Missouri river. Also, the act of the legislature of this state, which resumed said lands from the Iowa Central Air Line Company, to which they were granted by an act of the legislature in 1856, and granting them to defendant, which act was approved March 26, 1860; and they allege that by the provisions of said act it was expressly made a

condition of the grant that defendant should not commence to build its railroad at any point further west than Marion, and that the governor should not certify any of the lands granted to defendant until that part of its road between Marion and Cedar Rapids, together with so much more of said road as to make twenty miles in the aggregate, should be completed, and that the effect of these provisions was to set apart and appropriate 76,800 acres of said land for the construction of defendant's railroad between Marion and Cedar Rapids, and a sufficient distance beyond the latter point to make twenty miles; and they aver that defendant never has complied with this condition of the grant. They also aver that the 46,000 acres mentioned in the contract was to be conveyed by defendant to said Smith on condition that the parties should be able to draw and hold that much land on account of the construction of the railroad from Anamosa to Cedar Rapids, which is part of the railroad for the construction of which the grant of land was made by congress to the state; and they allege that it was the agreement of the parties to the contract that they would unite in an honest and earnest effort to obtain lands for the construction of that part of said railroad. Also, that the title to the lands which the parties expected and intended to draw on account of the construction of that part of said railroad was held by the state, and that it is still held by it; but that the state has no beneficial interest in the lands, but holds the naked legal title to the same for plaintiffs' use, it having constructed that portion of said road, or for defendant's use and benefit in the event it complies with its contract; and that it was necessary for the parties to procure the passage of an act of the legislature, either conveying said lands directly to the party entitled thereto under the terms of said contract, or prescribing the manner of transferring the title from the state to such party. Also that, according to the true intent and meaning of the contract, defendant was bound to join with plaintiff in procuring the passage of such legislation as

would enable the parties to draw and hold at least 46,000 acres of land on account of said railroad from Anamosa to Cedar Rapids, and would also provide for the transfer of the title to the party entitled under the contract to receive the same. But they allege that it has neglected and refused to join in procuring such legislation, and that it has used its influence to prevent, and has prevented, the passage of such legislation.

Defendant's answer is—*First*, a general denial of the allegations of the petition; *second*, that the action is barred by the statute of limitations; *third*, that the rights of the parties under said contract were fully adjudicated in a former action between the same parties; and, *fourth*, that, under and by virtue of the agreement set out in the petition, the parties agreed to unite in an effort to procure the necessary legislation by congress, or the legislature of the state, to secure to defendant a grant of land on account of the construction of a railroad from Anamosa to Cedar Rapids, and that it was further agreed that, in case the parties were able to procure a grant of at least 46,000 acres on that account, the defendant would convey to plaintiff the 46,000 acres described in the contract, and that such conveyance should be a full and complete settlement of all claims and demands between the parties; but that its undertaking to convey said land to plaintiff was contingent upon the ability of the parties to procure said grant, and that neither congress nor the general assembly of the state has ever passed any law making such grant. The judgment of the district court was for defendant. Plaintiff appeals.

*Crane & Joerns* and *Edward McCeney*, for appellants.

*E. S. Bailey*, for appellee.

REED, J.—By the act of congress approved May 15, 1856, there was granted to this state, in aid of the construction of

a railroad from Lyons City to a point of intersection with the Iowa Central Air Line Railroad near Maquoketa, thence on said line, as near as practicable to the forty-second parallel, across the state to the Missouri river, every alternate section of land designated by odd numbers, for six sections in width, on each side of said road.    The act also provided that in case it should appear, after the line of said road was definitely fixed, that the United States had sold any portion of the land so granted, an amount equal thereto might be selected by the state in lieu thereof in alternate sections within fifteen miles of the line of the road.    By an act approved May 14, 1856, the state accepted the grant, and conferred the same on the Iowa Central Air Line Railroad Company, a corporation having the power to build said line of railroad.    In 1859 this company became insolvent before any portion of the road was completed.    It transferred its franchise and rights to another company, the Dubuque, Marion & Western Railroad Company, and that company transferred the same to the plaintiff, the Dubuque Southwestern Railroad Company.

The act of the legislature granting the lands to the Iowa Central Air Line Company reserved to the state the right to resume the rights thereby conferred, upon the failure of that company to complete and equip at least seventy-five miles of its road within three years from the date of the grant; and in 1860 the legislature passed an act resuming the grant, because of the failure of the company to build and equip that amount of road within the time specified.    It had then been ascertained that, owing to the amount of lands within the limits of the grant which had been disposed of by the United States before the grant was made, the state would not acquire, even within the fifteen-mile limit, the amount of lands intended to be conferred upon it by the grant, and the legislature in the same year granted to the defendant all the lands and rights acquired by it under the grant, on condition that it would build a road from some convenient point on the Cedar river, near the forty-second parallel, westward to the Missouri river.

The act contains a provision that defendant should not commence to build its road at any point further west from the Mississippi river than the town of Marion, in Linn county, and that the governor should not certify to defendant any of the lands transferred to it by the grant until that portion of the road between Marion and Cedar Rapids, together with so much more of said road as to make in the aggregate at least twenty miles, should be completed and equipped.

Defendant built its road from Cedar Rapids to the Missouri river, a distance of 271 miles, within the time prescribed in the grant, but has never built the portion of the road between Marion and Cedar Rapids; the last-named point being five and thirty-four one-hundredths miles further west than Marion. Anamosa is east of Marion; it is also some distance east of the Cedar river. Marion, Anamosa and Cedar Rapids are all on the line of the Iowa Central Air Line Railroad, as the same was located. The plaintiff, the Dubuque & Southwestern Company, built a road on this line from Anamosa through Marion to Cedar Rapids. The governor of the state, as the work of constructing defendant's road progressed, certified the fact of the completion of the various sections of twenty miles thereof; and, when it was completed to the Missouri river, he gave a certificate of the length of the road, and that it was constructed in accordance with the requirements of the grant. Certificates covering 100 miles of the road had been given at the time the contract, for the violation of which this suit is brought, was entered into. Defendant has received all the lands which were certified to the state under the grant. This amount is not in excess of what it would be entitled to for the number of miles of road constructed by it, estimated on the basis of six sections for each mile of road, which is the basis of the congressional grant. The Iowa Central Air Line Company, before it became insolvent, issued certain construction bonds; and, to secure the same, gave a trust deed covering its franchise and property, including its rights under the grant by the state to it. Platt

Smith, as attorney for the holders of these bonds, had obtained judgment foreclosing this trust deed.    He was also attorney for the Dubuque & Southwestern Company.    The claim which he was asserting, and which was intended to be settled by the contract in suit, was that the plaintiffs in the foreclosure suit acquired an interest in the lands under the trust deed and judgment of foreclosure, and that the Dubuque & Southwestern Company acquired an interest in the lands by virtue of the assignment to it of the rights and franchise of the Air Line Company, and the fact that it had constructed a portion of the railroad in aid of which the grant was originally made.

In the case of *Smith v. Cedar Rapids & M. R. R. Co.*, 43 Iowa, 239, which was an action between these same parties for the enforcement of the undertaking of defendant in the contract to convey the 46,000 acres of land, this court put a construction upon the contract; and it was held in that case that defendant's undertaking was to convey the lands mentioned in the contract only in case the parties should be able to draw lands to the amount of 46,000 acres on account of the construction of the road betweeen Anamosa and Cedar Rapids, and, as this condition precedent had not occurred, plaintiffs were not entitled to judgment for the specific performance of the agreement to make the conveyance.    In this action the plaintiffs seek to recover damages on account of the alleged refusal of defendant to unite with them in an application to the legislature for the enactment of such legislation as would have enabled the parties to draw and hold the amount of land specified in the contract, on account of the construction of the road from Anamosa to Cedar Rapids; the claim being that the provision of the grant from the state to defendant, which required it to commence the construction of its road at Marion, and which forbade the governor to certify to it any portion of the land until it had constructed and equipped a section of twenty miles of road, which should include the road between Marion and Cedar Rapids, was a setting

apart of a specific amount of land for that particular section; and, as defendant never built the road between those points, it was not entitled to the lands so set apart for that section; and that these lands remained within the control of the state at the time they requested defendant to unite with them in asking the legislature to enact such legislation, and that the legislature could then have granted them to the parties on account of the construction of the road from Anamosa to Cedar Rapids, and would have done so if defendant had united in requesting it to make that application of them.

This claim, we think, cannot be maintained. The request of plaintiff to defendant to unite with them in asking the legislature to enact the proposed legislation was made in March, 1878. Defendant completed its road to the Missouri river in February, 1867, and in July of that year the governor gave his certificate that it had constructed 271 miles of road, and that the same was constructed according to the requirements of the act of congress, by which the lands were granted to the state, and the laws of the state by which they were granted to the defendant. The former certificate applied to and covered the 100 miles first built, the construction of which commenced at Cedar Rapids. These certificates of the governor were given in compliance with the requirements of section 4 of the act of congress granting the lands to the state, which provides that, "when the governor of said state shall certify to the secretary of the interior that any twenty continuous miles of said road is completed, then a quantity of land hereby granted not to exceed one hundred and twenty sections, and included, within a continuous length of twenty miles of said road, may be sold; and so from time to time until said road is completed."

The giving of the certificates was a recognition by the executive department of the state government of defendant's rights to the lands included in the grant, on account of the construction of its road from Cedar Rapids to the Missouri river. There is no doubt, we think, but that the certificate

first given was intended by the governor to apply to and cover the section of the road which, commencing at Cedar Rapids, extends thence westward twenty miles, and the certificate was given to enable the defendant to dispose of a portion of the land covered by the grant on account of the construction of that section of the road. And the final certificate, by its terms, applies to and covers the whole 271 miles of road constructed by defendant, and was given to enable defendant to dispose of so much land as, by the terms of the congressional grant, would pass on account of the construction of that number of miles of road. The construction placed by the governor upon the grant to defendant undoubtedly was that it entitled defendant, notwithstanding the provision with reference to the initial point of its road, to 120 sections of land on account of the construction of the section of twenty miles of road, which commenced at Cedar Rapids; and that defendant was entitled to lands, according to the terms of the grant, for each mile of road constructed by it. Under this construction, as we have seen, all the lands included in the congressional grant passed to defendant under the grant from the state, and this construction had been acquiesced in by the legislature for more than ten years when plaintiffs requested defendant to unite in asking it to enact such legislation as would appropriate a portion of the lands on account of the construction of the road from Anamosa to Cedar Rapids.

The facts of the situation, then, briefly, are these: The state conferred upon defendant the whole of the lands granted to it in aid of the construction by it of a railroad from a point on the Cedar river, near the forty-second parallel, westward to the Missouri river, and designated Marion as the point at which the construction of the road should be commenced. Defendant commenced the construction of its road at Cedar Rapids, which is a point on the Cedar river, and near the forty-second parallel, and built from that point to the Missouri river. The executive and legislative depart-

ments of the state governments have determined that this was such a compliance by defendant with the terms of the grant as entitled it to lands on account of the construction of the road actually built by it; and this construction has been acquiesced in, and acted upon, by both parties to the grant, for years. It is insisted by appellee that this ought to be accepted as conclusive evidence of a waiver by the state of the condition of the grant under which it was required to commence the construction of its road at Marion; but we think we are not required now to go to the extent of holding that the state has precluded itself of all remedy on account of the non-compliance by defendant with that condition of the grant. It was sufficient to say that, having put the construction upon the grant which it did, and having passed the title to the lands to defendant under that construction, it could not afterwards assert a claim to the lands, but its remedy, if it had any, was by a proper proceeding in the courts to compel defendant to perform the condition.

We reach the conclusion, then, that, at the time plaintiff requested defendant to unite with them in asking the legislature to pass such enactment as would enable the parties to draw and hold lands on account of the construction of the railroad from Anamosa to Cedar Rapids, the state had no interest in the lands included in the grant, and the legislature had no power to appropriate any portion of them to that object; and, consequently, that the refusal of defendant to unite in the request affords plaintiff no grounds of complaint. The law never requires a party to do a vain or useless act. Nor will it make his refusal to do such act the ground of a cause of action against him.

Appellants insist, however, that, as none of the certificates of the governor covered the five and thirty-four hundredths miles of road between Marion and Cedar Rapids, the state is not divested of the lands which were appropriated by the grant to that piece of road, and consequently they might have been appropriated to the object contemplated in the contract;

and, in consequence of defendant's refusal to unite with it in the request that they be so applied, it has a cause of action against it for the value of the land so appropriated. There are two answers to this position: (1) As we have seen, under the construction put upon the grant to defendant by the state, all of the lands included in the grant have been appropriated on account of the construction of the road from Cedar Rapids to the Missouri river; and (2) by the terms of the contract between the parties, defendant was bound to convey the 46,000 acres only on condition that the parties were able to draw and hold at least that amount of land on account of the construction of the road from Anamosa to Cedar Rapids. On the basis of six sections for each mile of road, the amount of land appropriated to the road between Marion and Cedar Rapids was 20,505 acres. If the state had had control of that amount of land, and had granted it to the parties on account of the construction of the road from Anamosa to Cedar Rapids, we think it clear that defendant could not have been compelled under this contract to convey any part of the 46,000 acres. The agreement was to convey a specific amount of land on the happening of a certain condition, and defendant could not have been compelled to convey a different amount of land on the occurrence of some other event.

We think the judgment of the district court is right, and it is

AFFIRMED.